UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MELODY A. POZNANSKI,

      Plaintiff,

v.                                      Case No:   2:14-cv-657-FtM-MRM

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____/

## OPINION AND ORDER

This cause is before the Court on Plaintiff Melody A. Poznanski's Complaint (Doc. 1) filed on November 10, 2014.  Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability and disability insurance benefits.  The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions.  For the reasons set out herein, the decision of the Commissioner is **affirmed** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

### I.      Social Security Act Eligibility, the ALJ Decision, and Standard of Review

### A.      Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  The impairment must be severe, making the claimant unable to do her previous work, or any

other substantial gainful activity that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911.  Plaintiff bears the burden of persuasion through step four, while the burden shifts to the Commissioner at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

### B.      Procedural History

On March 22, 2011, Plaintiff filed an application for disability insurance benefits asserting an onset date of November 9, 2010.  (Tr. at 121, 223-234).  Plaintiff's application was denied initially on April 14, 2011, and on reconsideration on July 5, 2011.  (Tr. at 121-22).  A hearing was held before Administrative Law Judge ("ALJ") M. Dwight Evans on February 8, 2013.  (Tr. at 31-90).  The ALJ issued an unfavorable decision on March 27, 2013.  (Tr. at 13-25).  The ALJ found Plaintiff not to be under a disability from November 9, 2010, through the date of the decision.  (Tr. at 25).

On September 18, 2014, the Appeals Council denied Plaintiff's request for review.  (Tr. at 1-6).  Plaintiff filed a Complaint (Doc. 1) in the United States District Court on November 10, 2014.  This case is ripe for review.  The parties consented to proceed before a United States Magistrate Judge for all proceedings.  (*See* Doc. 20).

### C.  Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that she is disabled.  *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).[1]  An ALJ must determine

---

[1] Unpublished opinions may be cited as persuasive on a particular point.  The Court does not rely on unpublished opinions as precedent.  Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. App. P.  Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules.  11th Cir. R. 36-2.

whether the claimant:  (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform her past relevant work; and (5) can perform other work of the sort found in the national economy.  *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004).  The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five.  *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ found that Plaintiff met the insured status requirements through December 31, 2015.  (Tr. at 15).  At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 9, 2010, the alleged onset date.  (Tr. at 15).  At step two, the ALJ found that Plaintiff suffered from the following severe impairments: multi-level spondylosis of the lumbar spine and a posterior annular tear and disc herniation; lumbar back pain; mild anterior osteophyte and posterior osteophyte formation at C6-7; status post anterior cervical discectomy and fusion from C4 to C6 in 2002; status post hardware removal from C4 to C6 with ACDF at C3-4 and C6-7; neck pain; rotator cuff tendonitis bilaterally in shoulders; impingement syndrome in the right shoulder and disorders of bursac and tendons in the left shoulder; and bilateral shoulder pain.  (Tr. at 15).  At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).  (Tr. at 17).  At step four, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to:

> occasionally lift/carry 21-50 pounds, frequently lift/carry 11-20 pounds, and continuously lift/carry up to 10 pounds.  She can sit for 4 hours at one time without interruption, stand 2 hours at one time without interruption, and walk for 2 hours at a time without interruption.  Claimant can sit for 8 hours, stand for 6 hours, and

walk for 5 hours in an 8-hour workday. Claimant does not require a cane for ambulation. Claimant can occasionally use the bilateral hands to reach in all directions and overhead. She can frequently use the bilateral hands to handle, finger, feel, and push/pull. She is right hand dominant. She can frequently use the bilateral feet for operation of foot controls. She can occasionally climb ladders and scaffolds. She can frequently climb stairs and ramps, balance, kneel, stoop, crouch and crawl. She can occasionally tolerate exposure to unprotected heights and moving mechanical parts. She can frequently tolerate exposure to humidity and wetness, dusts, odors, fumes and pulmonary irritants, extreme cold, extreme heat, and vibrations, and operate a motor vehicle. She can tolerate loud noise such as heavy traffic. She has no restrictions with regard to activities of daily living. The claimant has a mild limitation with regard to her ability to respond appropriately to usual work situations and to changes in a routine work setting. Occasionally is defined as very little to 1/3 of the time in an 8-hour workday. Frequently is defined as 1/3 to 2/3 of the time in an 8-hour workday. Continuously is defined as more than 2/3 of the time in an 8-hour workday. Mild is defined as a slight limitation but the individual can generally function well.

(Tr. at 18). The ALJ determined that Plaintiff is capable of performing her past relevant work as a hygienist, DOT # 078-361.010, skilled and light in exertion; real estate agent, DOT # 250.350-018, skilled and light in exertion; and real estate clerk, DOT # 219.362-046, skilled and sedentary in strength.[2] (Tr. at 23). The ALJ determined that Plaintiff's past relevant work did not require the performance of work-related activities precluded by the claimant's RFC. (Tr. at 23).

In the alternative, the ALJ proceeded to step five of the sequential evaluation. After considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including the following:

1)  Telephone solicitor, DOT # 299.387-016, sedentary, semi-skilled;

2)  Usher, DOT # 344.677-014, light, unskilled; and

3)  Hostess, DOT # 352.677-010, light, semi-skilled.

---

[2] The "DOT" refers to the *Dictionary of Occupational Titles*.

(Tr. at 24).  The ALJ concluded that Plaintiff was not under a disability from November 9, 2010, through the date of the decision.  (Tr. at 25).

### D.  Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. §405(g).  Substantial evidence is more than a scintilla; *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); and *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### II.   Analysis

On appeal, Plaintiff raises four issues.  As stated by Plaintiff, they are:

1) The ALJ erred in relying on the vocational expert's response to an inaccurate hypothetical question.

5

2) The ALJ failed to properly evaluate the credibility of Plaintiff regarding her complaints of disabling pain and functional limitations.

3) The ALJ failed to properly weigh the medical opinion evidence of record and failed to give appropriate deference to the medical opinion from the treating doctors for Plaintiff's various physical impairments.

4) The ALJ failed to consider whether Plaintiff was disabled for a closed period of disability.

(Doc. 27 at 1).  The Court will consider each issue in turn.

## A.  Vocation Expert's Testimony

Plaintiff argues that at the hearing, the ALJ posed a hypothetical question to the vocational expert ("VE") that included a limitation that a hypothetical claimant was limited to frequent handling, fingering, feeling, pushing, or pulling.  The ALJ failed to define "frequent" or "frequently" for the VE.  Plaintiff claims that had the VE understood the term "frequent," his testimony would have differed, and the ALJ would have found Plaintiff disabled.  Plaintiff argues that on direct examination, the VE testified that a hypothetical claimant who was limited to frequent handling, fingering, feeling, pushing, or pulling could perform Plaintiff's past relevant work as a dental hygienist, real estate agent, and real estate clerk, as well as perform jobs as a telephone solicitor, usher, and hostess.  On examination by Plaintiff's counsel, after Plaintiff's counsel defined the term "frequently" as being able to handle, finger, feel, push and pull with her hands from one-third to two-thirds of the day, Plaintiff argues that the VE "conclusively confirmed" that this individual could not perform substantial gainful activity ("SGA").

In support of the "frequent" limitation for handling, fingering, feeling, pushing, and pulling with the hands, Plaintiff cites to the report of Dr. Rabinowitz, to whom the ALJ afforded great weight.  Further, Plaintiff argues that the ALJ limited Plaintiff's RFC to frequent handling,

fingering, feeling, pushing and pulling with the hands as well.  Plaintiff concludes that the hypothetical to the VE was flawed due to the failure of the ALJ to define "frequent."  Therefore, Plaintiff concludes that the testimony by the VE on examination by the ALJ was incorrect, and contradicted by the correct testimony on examination by Plaintiff's counsel.

The Commissioner responds that the issue for the Court to determine is whether substantial evidence supports the ALJ's decision.  The Commissioner argues that the jobs the VE found, both Plaintiff's past relevant work and additional jobs in the national economy have requirements that allowed for the limitation of frequent handling, fingering, feeling, pushing, or pulling in the DOT.  Using the definitions found in the DOT, the Commissioner contends that a dental hygienist, real estate sales agent, real estate clerk, telephone solicitor, usher, and hostess require at most, no more than frequent handling, fingering, feeling, pushing, or pulling, and some of the jobs only require occasional handling, fingering, feeling, pushing, or pulling.  The Commissioner argues that although the ALJ did not specifically mention the inconsistencies in the VE's testimony, the ALJ's decision was supported by substantial evidence consistent with the DOT's requirements for handling, fingering, feeling, pushing, or pulling.

On direct examination, the ALJ posed a hypothetical to the VE.  (Tr. at 64).  Relating to the hypothetical claimant's hands, the ALJ propounded:  "with regard to handling, fingering, feeling, pushing, or pulling, that would be frequently."  (Tr. at 64).  The ALJ asked the VE if an individual with all of the limitations he listed be able to perform Plaintiff's past relevant work.  (Tr. at 65).  The VE testified that an individual would not be able to perform Plaintiff's past relevant work because the DOT requires that an individual be able to reach overhead and all directions frequently, and the hypothetical limited the person to occasionally.  (Tr. at 65).  Within the VE's testimony is a discussion concerning limitations as to handling, fingering, and

feeling. The VE acknowledged the requirements in the DOT for the jobs of dental hygienist, real estate agent, and real estate clerk (Plaintiff's past relevant work) require only frequent handling, fingering, feeling, pushing, or pulling.  (Tr. at 66).[3]  Moreover, the VE testified that with the same hypothetical limitations, a claimant is able to perform the jobs of telephone solicitor, usher, and hostess.  (Tr. at 67).  By contrast, on examination by Plaintiff's counsel, counsel asked the VE if the hypothetical claimant who could only use his or her hands for handling, fingering, feeling, pushing, and pulling from one-third to two-thirds of the day would be able to be employable.  (Tr. at 86).  The VE responded that there would be no SGA (substantial gainful activity) for this individual.  (Tr. at 86).

"The general rule is that after determining the claimant's RFC and ability or inability to return to past relevant work, the ALJ may use the grids to determine whether other jobs exist in the national economy that a claimant is able to perform."  *Phillips v. Barnhart*, 357 F.3d 1232, 1242 (11th Cir. 2004).  An ALJ may use the Medical Vocational Guidelines or may obtain the testimony of a vocational expert to determine whether there a jobs that exist in the national economy that a claimant can perform.  *Winchell v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011).  If the ALJ decides to use a vocational expert, for the vocational expert's opinion to constitute substantial evidence, "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."  *Id.* (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002)).

In this case, the ALJ determined that Plaintiff's RFC was limited to frequent handling, fingering, feeling, pushing, or pulling.  The parties do not dispute this finding by the ALJ.

---

[3]  The VE testified, "The dental hygienist is all reaching, handling, fingering, feeling. That's frequent, frequent, frequent, frequent."  (Tr. at 66).

Rather, Plaintiff argues that the hypothetical presented to the VE was unclear because the ALJ failed to define the term "frequent" or "frequently." The ALJ then presented a hypothetical to the VE that included this limitation. The VE responded to the ALJ's hypothetical that a claimant with this limitation was capable of performing Plaintiff's past relevant work as a hygienist, real estate agent, real estate clerk, and is able to also perform the jobs of telephone solicitor, usher, and hostess. The VE's testimony is clear that he understood that the jobs he found Plaintiff capable of performing allowed for frequent handling, fingering, feeling, pushing, or pulling. Moreover, even if the VE did not understand the definition of frequent, he specifically testified that the DOT's requirements for the jobs he listed were at most frequent for handling, fingering, feeling, pushing, or pulling.[4] Therefore, even assuming that the VE did not know the definition for frequent, he knew to list only jobs in the DOT that required at most frequent handling, fingering, feeling, pushing, or pulling in response to the hypothetical.

It appears that, on examination by Plaintiff's attorney, the VE changed his testimony finding a person limited to frequent handling, fingering, feeling, pushing and pulling was not capable of performing substantial gainful activity. Even with this conflicting testimony, the VE provided the DOT numbers for all the positions he discussed, and the matching DOT job descriptions confirm that the jobs listed require at most frequent handling, fingering, and feeling.[5] Therefore, the ALJ's decision that Plaintiff was capable of performing the jobs of

---

[4] Although the ALJ limited Plaintiff to frequent push/pull, upon review of the DOT requirements for the positions listed, a push/pull requirement was not included in the DOT relating to hands.

[5] The DOT provides the following requirements as to handling, fingering, and feeling for the following positions:  (1) dental hygienist  –  frequent, DOT # 078.361-010; (2) real estate sales agent – frequent, DOT # 250.357-018; (3) real estate clerk  – frequent for handling and fingering but feeling not present, DOT # 219.362-046; (4) telephone solicitor – handling occasional, fingering frequent, feeling not present, DOT # 299.357-014; (5) usher – handling and

hygienist, real estate agent, real estate clerk, telephone solicitor, usher, and hostess with a limitation of frequent handling, fingering, feeling, pushing, or pulling is substantially supported by the evidence.  The Court finds that the ALJ did not err in his hypothetical to the VE or in determining that Plaintiff was capable of performing the listed jobs.

### B.  Credibility

Plaintiff claims that the ALJ failed to consider key pieces of evidence when determining Plaintiff's credibility as to her pain and functional limitations.  Specifically, Plaintiff claims that the ALJ did not consider the following:  (1) the Social Security Claims Representative's observation that Plaintiff had problems with both sitting and standing during Plaintiff's interview; (2) Plaintiff's diagnosis of carpal tunnel syndrome, cubital tunnel syndrome, and fibromyalgia; (3) the side-effects of Plaintiff's medications, which included drowsiness and dizziness; (4) Plaintiff's development of blood clots following surgery; (5) Plaintiff's Worker's Compensations benefits; and (6) Plaintiff's strong work history.  The Commissioner asserts that the ALJ properly considered Plaintiff's subjective complaints.  The ALJ determined that Plaintiff's allegations and testimony were only partially credible.  (Tr. at 20).

To establish disability based on testimony of pain and other symptoms, a plaintiff must satisfy two prongs of the following three-part test:  "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain."  *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.3d 1221, 1223 (11th Cir. 1991)).  After an ALJ has considered a plaintiff's

---

fingering occasional, feeling not present, DOT # 344.677-014; and (5) hostess – handling and fingering frequent but feeling not present, DOT # 352.377-010.

complaints of pain, the ALJ may reject them as not credible, and that determination will be reviewed to determine if it is based on substantial evidence. *Moreno v. Astrue*, 366 F. App'x 23, 28 (11th Cir. 2010) (citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)). If an ALJ discredits the subjective testimony of a plaintiff, then he must "articulate explicit and adequate reasons for doing so. Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true." *Wilson*, 284 F.3d at 1225 (citations omitted). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995)). The factors an ALJ must consider in evaluating a plaintiff's subjective symptoms are: "(1) the claimant's daily activities; (2) the nature and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) effects of medications; (5) treatment or measures taken by the claimant for relief of symptoms; and other factors concerning functional limitations." *Moreno*, 366 F. App'x. at 28 (citing 20 C.F.R. § 404.1529(c)(3)).

### 1. Observations of Claims Representative

First, Plaintiff asserts that the ALJ erred in failing to consider the observations of the Social Security Claims Representative that Plaintiff had problems with both sitting and standing during Plaintiff's interview. There is no "rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision, [], is not a broad rejection which is 'not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (quoting *Foote*, 67 F.3d at 1561). This one observation does not lead the Court to conclude that the ALJ failed to consider Plaintiff's medical condition as a whole. The ALJ reviewed and summarized Plaintiff's medical condition, including instances when her physicians

discussed her ability to sit and stand.  (*See* Tr. at 18-23).  The Court finds that the ALJ did not err in failing to mention the one observation of the Social Security Claims Representative.

### 2.  Carpal tunnel syndrome, cubital tunnel syndrome, and fibromyalgia

Second, Plaintiff argues that the ALJ never considered or addressed Plaintiff's diagnosis of carpal tunnel syndrome, cubital tunnel syndrome, and fibromyalgia.  Arguing that these symptoms do not cause visibly disabling symptoms, Plaintiff claims that these diagnoses do produce pain and limit Plaintiff physically.  The Commissioner responds that the medical records concerning a diagnosis of carpal tunnel syndrome were dated November 12, 2004, and the records relating to cubital tunnel syndrome diagnosis were dated February 19, 2008, which is years prior to the alleged onset date of November 9, 2010.  (Tr. at 382, 321).  Further, the Commissioner contends that the records cited by Plaintiff refer to her subjective reports of fibromyalgia, and do not provide a medical diagnosis of the disease.

The Court reviewed the records cited by Plaintiff to support her argument that the ALJ failed to consider Plaintiff's diagnosis of carpal tunnel syndrome, cubital tunnel syndrome, and fibromyalgia.  Although Plaintiff argues that the ALJ erred in failing to consider these diagnoses, a "diagnosis [ ] is insufficient to establish that a condition caused functional limitations." *Wood v. Astrue*, 2012 WL 834137, at *5 (M.D. Fla. Feb. 14, 2012) (citing *Moore v. Barnhart*, 405 F.3d 1207, 1213 n.6 (11th Cir. 2005)).  Further, the records indicate that Plaintiff was diagnosed with carpal tunnel syndrome and cubital tunnel syndrome years before the alleged onset date, and Plaintiff failed to indicate medical records that support limitations for these diagnoses or for any pain associated with them during the relevant time period.  As to fibromyalgia, the records indicate that Plaintiff subjectively informed the medical personnel of a diagnosis of fibromyalgia, but medical records supporting a diagnosis of fibromyalgia were not cited by

Plaintiff.  The Court finds that the ALJ did not err in failing to consider Plaintiff's carpal tunnel syndrome, cubital tunnel syndrome, and fibromyalgia when determining Plaintiff's credibility.

### 3.  Side effects of medication

Third, Plaintiff argues that the ALJ never addressed Plaintiff's side effects to her pain medication including drowsiness and dizziness.  Plaintiff claims that she suffers from significant side effects from her medication, and the ALJ should have taken these side effects into account in assessing her credibility.  The Commissioner argues that the only evidence Plaintiff provides is her own testimony and self-reported statements from her disability reports.

An ALJ has a duty to develop the record, but Plaintiff also had the burden of proving that she is disabled, including introducing evidence that supports her symptoms, (including any side effects from medications).  *Walker v. Comm'r of Soc. Sec.*, 404 F. App'x 362, 366 (11th Cir. 2010) (citation omitted).  A further factor for the Court to consider is whether Plaintiff reported the side effects of her medication to her physicians.  *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 938 (11th Cir. 2011).  In this case, Plaintiff cited to instances in the record when she listed certain side effects of her medications, but these citations were not during visits to her treating physicians.  Plaintiff failed to cite to any medical records in which she discussed any side effects with her treating physicians, or where her physicians raised any concerns as to the side effects of her medications.  *See Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 904 (11th Cir. 2011) (citing *Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990)).  The Court finds that the ALJ did not err in failing to consider any side effects from Plaintiff's medications.

### 4.  Blood clots

Fourth, Plaintiff argues that the ALJ failed to give appropriate weight and consideration

to the fact that Plaintiff developed blood clots following her May 24, 2012 spinal surgery and was hospitalized for a week due to this condition.  Plaintiff argues that the ALJ never considered the danger to Plaintiff and others if she returned to work while taking blood thinners to prevent blood clots.  The Commissioner responds that Plaintiff failed to cite to any support for her conjecture that by taking anticoagulant medication she is a risk to herself and others.  Plaintiff fails to cite to any medical records that support her contention.  Without any medical support, the Court finds that the ALJ did not err in failing to accord any weight to the fact that for a period of time Plaintiff was taking blood thinning medication and continues to take an aspirin for this condition.

### 5.  Worker's Compensation

Fifth, Plaintiff asserts that the ALJ never addressed the fact that Plaintiff received workers' compensation benefits for a period of time due to her inability to perform her past relevant work as a dental hygienist, and she continued to receive these benefits until February 2012.  Plaintiff claims that the benefits stopped not because she could to return to work but because she refused to undergo surgery for her back.  The Commissioner responds that the ALJ considered the evidence relating to Plaintiff's workers' compensation claim and determined that Plaintiff was not disabled under the rules and regulations of the Social Security Administration.

"Generally, '[t]he findings of disability by another agency, although not binding on the Secretary, are entitled to great weight.'"  *Falcon v. Heckler*, 732 F.2d 827, 831 (11th Cir. 1984) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983)).  The definitions of disability under Florida's worker's compensation law and federal social security law differ, but the Florida Supreme Court has interpreted the Florida Statute "in such a way that the Florida statute operates similarly to the definition under the federal regulations."  *Id*. at 831.

The ALJ mentioned that Plaintiff was "dropped from the workman's compensation claim in February 2012 because she would not do surgery." (Tr. at 19). The records from workers' compensation consisted of a First Report of Injury or Illness, treating records from physicians, and payment records of her workers' compensation claim from November 29, 2010 through February 2011.

Plaintiff fails to cite to the record for any medical decision by workers' compensation awarding benefits to Plaintiff or to any medical support for the workers' compensation decision. Plaintiff is asking that the ALJ to blindly give great weight to the workers' compensation determination without providing the workers' compensation determination or citing to any records from workers' compensation that support a disability finding. Without any citation to the award of workers' compensation or the records that support the award, the Court does not find that the ALJ erred in failing to afford great weight to the workers' compensation award.[6]

**6. Strong work history**

Plaintiff argues that the ALJ failed to consider her strong work history in assessing the severity of her pain. Plaintiff argues that she worked over seven years following her cervical surgery and even worked part-time after injuring herself on March 16, 2010. Plaintiff adds that the ALJ's RFC fails to deal with her complaints of headaches and her intolerance to weather

---

[6] Plaintiff raises an argument that the ALJ improperly discounted Plaintiff's complaints of pain because the clinical and laboratory abnormalities were not such that one would expect to find of a completely disabled individual. (Tr. at 22). This was one comment by the ALJ supporting his finding that the objective clinical and laboratory tests did not support Plaintiff's subjective complaints of pain. Plaintiff claims that this statement was improper in light of the effects of Plaintiff's medication, her surgical treatment, her receipt of workers' compensation, and the opinions of her treating physicians. These arguments are addressed in other sections, *infra*, concerning Plaintiff's medication, her surgical treatment, her receipt of workers' compensation, and the opinions of her treating physicians.

changes and temperature extremes.  Plaintiff adds that her daily activities do not support the

ALJ's RFC finding.

Plaintiff cites to no case law to support her contention that the ALJ erred in failing to

consider her strong work history.  The ALJ was aware of Plaintiff's past relevant work history

and questioned the VE at the hearing concerning Plaintiff's work history.  (Tr. p. 35-37, 41-45).

Plaintiff fails to cite to the record to support a limitation for headaches and problems with

weather changes and temperature extremes that should have been included in Plaintiff's RFC.

Again, Plaintiff fails to cite to the record in support of her contention that her daily activities do

not support the ALJ's RFC finding.  The Court finds that the ALJ did not err in determining

Plaintiff's credibility.

### C.  Weight of the medical opinion evidence

Plaintiff argues that the ALJ failed to properly weigh the opinions of the physicians of

record, and failed to give deference to the medical opinions of Plaintiff's treating physicians.

The Commissioner responds that the ALJ properly considered and weighed the medical opinions

of the physicians of record.

At the fourth step in the evaluation process, the ALJ is required to determine a claimant's

RFC and, based on that determination, decide whether the plaintiff is able to return to his or her

previous work.  *McCruter v. Bowen,* 791 F.2d 1544, 1547 (11th Cir. 1986).  The determination

of a claimant's RFC is within the authority of the ALJ and, along with the claimant's age

education, and work experience, the RFC is considered in determining whether the claimant can

work. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  Weighing the opinions and

findings of treating, examining, and non-examining physicians is an integral part of the ALJ's

RFC determination at step four.  *See Rosario v. Comm'r of Soc. Sec.*, 877 F. Supp. 2d 1254, 1265 (M.D. Fla. 2012).

"The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error."  *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (citation omitted).  The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011).  Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence."  *Id.* (citing *Cowart v. Shweiker,* 662 F.2d 731, 735 (11th Cir. 1981)).  The opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary.  *Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2004).  The Eleventh Circuit has concluded that good cause exists when the:  (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.  *Id.*

"Where an ALJ articulates specific reasons for failing to accord the opinion of a treating or examining physician controlling weight and those reasons are supported by substantial evidence, there is no reversible error."  *Poellnitz v. Astrue*, 349 F. App'x 500, 502 (11th Cir. 2009) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005)).  "Generally, the

opinions of examining or treating physicians are given more weight than non-examining or non-treating physicians unless 'good cause' is shown." *Id.* (citing 20 C.F.R. § 404.1527(d)(1), (2), (5); and *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)).

### 1. Dr. Rabinowitz

Plaintiff asserts that the ALJ gave great weight to the opinion of one-time examining physician Stanley Rabinowitz, M.D.  Plaintiff indicated that Dr. Rabinowitz determined that Plaintiff was able to perform handling, fingering, feeling, pushing, and pulling at the frequent level, meaning for only one-third to two-thirds of a day in both hands.  Plaintiff reasserts the argument that the VE testified during the examination by Plaintiff's counsel that if an individual that can only perform handling, fingering, feeling, pushing, and pulling frequently, then that person is unable to perform substantial gainful activity.  Thus, Plaintiff concludes that by relying on Dr. Rabinowitz's handling limitations, she is entitled to disability.  Plaintiff adds that she is actually more limited in the areas of lifting, carrying, reaching, pulling, pushing, handling and feeling than provided in the RFC.  The Commissioner responds that the ALJ properly afforded great weight to the opinion of Dr. Rabinowitz, and argues that Plaintiff is reiterating her argument concerning the VE's conflicting testimony at the hearing.

On January 5, 2013, Dr. Rabinowitz completed an examination of Plaintiff.  (Tr. 715-18).  After examination, Dr. Rabinowitz completed a Medical Source Statement of Ability To Do Work-Related Activities (Physical).  (Tr. at 722-27).  Dr. Rabinowitz found that Plaintiff was able to:  continuously lift/carry 10 pounds; frequently lift/carry 11-22 pounds; occasionally lift/carry 21 to 50 pounds; sit for 4 hours without interruption; stand and walk for 2 hours without interruption; sit for 8 hours in and 8-hour workday; stand for 6 hours in an 8-hour workday; walk for 5 hours in an 8-hour workday; ambulate without use of a cane; occasionally

reach overhead and all directions with both hands; frequently handle, finger, feel and push/pull with both hands; frequently operate foot controls with both feet; frequently climb stairs and ramps, balance, stoop, kneel, crouch, and crawl; occasionally climb ladders or scaffolds; occasionally be exposed to unprotected heights, and moving mechanical parts; frequently operate a motor vehicle; and frequently be exposed to humidity and wetness, dust, odors, fumes, pulmonary irritants, extreme cold, extreme heat, vibrations, and loud noise.  (Tr. at 722-26).  Dr. Rabinowitz also found that Plaintiff:  was able to perform activities like shopping; can travel independently; can ambulate without an assistive device; can walk a block at a reasonable pace even on uneven surfaces; can use public transportation; can climb a few steps at a reasonable pace; can prepare simple meals and feed herself; can care for her personal hygiene; and can sort, handle, or use paper files.  (Tr. at 727).

The Court is unclear as to Plaintiff's argument.  It appears that Plaintiff is arguing that by granting great weight to the opinion of Dr. Rabinowitz as far as the frequent limitation in handling, feeling, fingering, pushing/pulling, the ALJ erred in not finding Plaintiff disabled based on the VE's testimony when questioned by Plaintiff's counsel.  Plaintiff essentially reargues the issue concerning the discrepancy in the VE's testimony.  The Court resolved that issue, *supra*, finding that the ALJ's determination that Plaintiff was able to perform her past relevant work and other jobs listed in the national economy was based on substantial evidence because the DOT's requirements for these jobs did not entail more than the ability for frequent handling, fingering, feeling, pushing, or pulling.  Plaintiff raises no availing arguments as to why the ALJ should not have afforded Dr. Rabinowitz's opinion great weight.  Therefore, the Court finds that the ALJ did not err in affording the opinion of Dr. Rabinowitz great weight.

### 2. Dr. Daitch

Plaintiff argues that the ALJ erred in giving no weight to the medical opinions of Jonathan s Daitch, M.D., Albert Ponterio, M.D., and Ivan Cvik, M.D. The Commissioner responds that the ALJ afforded the proper weight to these opinion.

Dr. Daitch began treating Plaintiff under her workers' compensation claim on December 17, 2010. (Tr. at 447-50). Initially, Plaintiff complained of left low back pain since her accident on March 16, 2010. (Tr. at 447). Dr. Daitch ordered an MRI, and considered injections. (Tr. at 450). After reviewing the MRI, on January 17, 2011 and again on April 7, 2011, Dr. Daitch recommended low-dose steroid injections. (Tr. at 451, 477). On May 20, 2011, Plaintiff was given sacroiliac joint injections. (Tr. at 465-67).

On June 3, 2011, Dr. Daitch completed a Medical Source Statement. (Tr. at 456-57). Dr. Daitch determined Plaintiff was: able to occasionally lift/carry 10 to 20 pounds; able to stand/walk for less than 6 hours in an 8-hour workday; able to sit for less than 2 hours in an 8-hour work day; was unable to climb ramps/stairs/ladders, balance, stoop, kneel, crouch, and crawl; was unlimited in reaching in all directions, handling, fingering, and feeling; needed to take breaks every 60 minutes; had no visual limitations; needed to lie down during the day to relieve pain; and had no mental limitations. (Tr. at 456-57). Dr. Daitch concluded that Plaintiff had been disabled from substantial work since at least November 9, 2010. (Tr. at 457).

The ALJ noted Plaintiff's visits to Dr. Daitch, and that she underwent low dose epidural steroid injection to the lumbar spine in March 2011. (Tr. at 20). The ALJ also noted that Plaintiff had no change in pain level with these injections. (Tr. at 20). The ALJ did not accept the opinions from Dr. Daitch regarding Plaintiff's functional and physical limitations. Comparing Dr. Daitch's postural limitations to Plaintiff's most recent evaluation by Dr.

Rabinowitz, the ALJ found that the medical evidence as a whole does not support Dr. Daitch's limitation findings as to climbing ramps, stairs, ladders, balancing, stooping kneeling, crouching, and crawling. (Tr. at 23). Comparing the most recent evaluation by Dr. Rabinowitz in January 2013 to Dr. Daitch's opinion, the ALJ concluded that Dr. Daitch's opinion was not supported by substantial evidence. The ALJ compared Dr. Daitch's finding that Plaintiff could not perform any postural functions, to her most recent examination that showed: no range of motion limitations in the bilateral shoulders; walking normally without the use of an assistive device; dressing without assistance; no difficulty getting on and off the exam table; motor strength was 5/5 in the lower and upper bilateral extremities; and neck pain and headaches had improved with the recent surgery. The ALJ also noted that Plaintiff had limitations in the lumbar range of motion, and difficulty squatting halfway down. The ALJ concluded that Dr. Daitch's opinion was not supported by substantial evidence of record. (Tr. at 23).

That ALJ reviewed Dr. Daitch's records and opinions as a treating physician, and compared them to other record evidence. Dr. Daitch's opinion as to Plaintiff's limitations was completed prior to her most recent surgery. The most recent evaluation, and the only evaluation after Plaintiff's most recent surgery, was completed by one-time examining physician Dr. Rabinowitz. The ALJ reviewed Dr. Daitch's opinion carefully, then compared it to a more recent evaluation by Dr. Rabinowitz, and found that Dr. Daitch's opinion was not supported by the evidence of record. The ALJ articulated specific reasons for not accepting the opinions of Dr. Daitch as to Plaintiff's functional and physical limitations, and these reasons are supported by substantial evidence.

### 3. Dr. Ponterio

Dr. Ponterio, a non-examining State Medical Consultant, completed a Physical Residual

Functional Capacity Assessment on July 5, 2011. (Tr. 480-87). Dr. Ponterio determined

Plaintiff: could occasionally lift/carry 20 pounds; could frequently lift/carry 10 pounds; could

stand/walk for 6 hours in an 8-hour workday; could sit for 6 hours in an 8-hour workday; was

unlimited in push and/or pull; could occasionally climb ramp/stairs/ladder/rope/scaffolds; could

balance stoop, kneel, crouch, and crawl; was limited in reaching in all directions; was unlimited

in handling, fingering, and feeling; had no visual and communicative limitations; was to avoid

concentrated exposure to extreme cold, extreme heat, and hazards; and was unlimited in

exposure to humidity, noise, vibration, fumes/odors/dusts/gases/poor ventilation. (Tr. at 480-87).

   The ALJ gave little weight to Dr. Ponterio's assessment. The ALJ found that other

medical opinions were better supported by the medical evidence of record as a whole including

physical examinations and diagnostic testing. (Tr. at 22). The ALJ noted that Dr. Ponterio

rendered his opinion on July 5, 2011, and did not have the benefit of more recent medical records

and physical examinations, including that Plaintiff improved after her cervical surgery. (Tr. at

22). Again, the ALJ compared Dr. Ponterio's findings with Plaintiff's most recent examination

by Dr. Rabinowitz. (Tr. at 22). Using the same reasoning as when discounting Dr. Daitch's

opinion, the ALJ noted that Plaintiff's most recent examination showed no range of motion

limitation in the bilateral shoulders, she walked normally without the use of an assistive device,

she could dress without assistance, she had no difficulty getting on and off the exam table, her

motor strength was 5/5 in the lower and upper bilateral extremities, and her neck pain and

headaches had improved with the recent surgery. (Tr. at 22). Again the ALJ also noted that

Plaintiff had limitation in the lumbar range of motion, and difficulty squatting halfway down.

(Tr. at 22).

Unlike with Dr. Daitch, Dr. Ponterio was not a treating physician and his opinion is not afforded great weight absent good cause. The ALJ reviewed Dr. Ponterio's opinion and compared it to other record evidence. Dr. Ponterio's opinion as to Plaintiff's limitations was completed prior to her most recent surgery. The ALJ compared Dr. Ponterio's opinion to Dr. Rabinowitz's more recent evaluation and determined that Dr. Ponterio's opinion was not supported by the record as a whole. The ALJ articulated specific reasons for giving Dr. Ponterio's opinion little weight, and those reasons were supported by substantial evidence.

### 4. Dr. Cvik

On March 9, 2012, Dr. Cvik completed a Residual Functional Capacity Assessment. (Tr. at 702-03). Plaintiff cited to no other documents in the record from Dr. Cvik, and the Court found only this report from him. Dr. Cvik found Plaintiff: able to occasionally lift/carry less than 10 pounds; able to stand/walk for less than 6 hours in an 8-hour workday; able to sit less than 6 hours in an 8-hour workday; unable to climb ramps/stairs/ladders, balance, stoop, and crawl; able (for 1/3 of workday) to kneel and crouch; unable to reach in all direction; able (for 1/3 of workday) to handle; able (for 2/3 of workday) to finger and feel; needed a break every 20 minutes; had no visual limitations; did not need to lie down during the day to relieve pain; and was limited in concentration due to pain. (Tr. at 702-03).

The record is not clear as to the role of Dr. Cvik. The record contains only his Residual Functional Capacity Assessment. (Tr. at 701-03). No other records were included that support Dr. Cvik's findings. The ALJ utilized the same reasoning concerning Dr. Cvik's opinion as with the opinions of Dr. Daitch and Dr. Ponterio. (Tr. at 23). Basically, the ALJ compared Dr. Cvik's opinion, which was completed prior to Plaintiff's last surgery, to that of the more recent evaluation by Dr. Rabinowitz, and found that the opinion of Dr. Cvik was not supported by the

record as a whole.  (Tr. at 23).  The ALJ reviewed the opinion of Dr. Cvik and articulated specific reasons not to accept the opinion of Dr. Cvik, and those reasons are supported by substantial evidence.

### 5.  GAF score

Plaintiff includes a one-sentence argument that the ALJ never addressed the Global Assessment of Functions (GAF) score of only 55 as assessed by Cheryl Kasprzak, Psy.D. who examined Plaintiff in January 2013.  Plaintiff does not assert how the ALJ erred by failing to include this GAF score, or how Plaintiff may have been limited due to this GAF score.

"Although GAF scores frequently have been cited in Social Security disability benefits determinations, the Commissioner has declined to endorse the GAF scale for use in the Social Security and SSI disability programs, and has indicated that GAF scores have no direct correlation to the severity requirements of the mental disorders listings."  *Wilson v. Astrue*, 653 F. Supp. 2d 1282, 1293 (M.D. Fla. 2009) (internal quotation marks omitted) (citing *Wind v. Barnhart*, 133 F. App'x 684, 692 (11th Cir. 2005)).  Courts in this district have also recognized that GAF scores are of "questionable value in determining an individual's mental functional capacity."  *Wilson*, 653 F. Supp. 2d at 1293 (quoting *Gasaway v. Astrue*, No. 8:06–CV–1869–T–TGW, 2008 WL 585113, at *4 (M.D. Fla. Mar. 3, 2008)).  Given their questionable value, courts have generally declined to find reversible error where an ALJ does not expressly discuss a claimant's GAF scores.  *See e.g.*, *Bailey v. Astrue*, No. 3:09-cv-383-JJRK, 2010 WL 3220302, at *8-9 (M.D. Fla. Aug. 13, 2010) (finding the ALJ's failure to mention Plaintiff's GAF scores did not require remand); *Smith v. Comm'r of Soc. Sec.*, No. 6:10-cv-1478-Orl-31 KRS, 2011 WL 6217110, at *6-7 (M.D. Fla. Nov. 1, 2011), *report and recommendation adopted*, 2011 WL 6217124 (M.D. Fla. Dec. 14, 2011), *aff'd*, 486 F. App'x 874 (11th Cir. 2012); *see also Dyer v.*

*Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (there is no rigid requirement that an ALJ specifically refer to every piece of evidence in the record).

The ALJ carefully reviewed Dr. Kasprzak's records and summarized them.  (Tr. at 16).  Even though the ALJ may have failed to mention Plaintiff's GAF score, a GAF score is of questionable value and it is not reversible error to fail to mention a GAF score.  Therefore, the Court finds that even if the ALJ failed to mention Plaintiff's GAF score, the error is harmless because he carefully reviewed Dr. Kasprzak's records and opinions.

### D.  Closed period of disability

Plaintiff argues that the ALJ failed to consider whether Plaintiff was disabled for a closed period of time.  Plaintiff contends that the ALJ failed to consider the possibility that Plaintiff was unable to work from her alleged onset date of November 9, 2010 to sometime prior to the consultative examination conducted by Dr. Rabinowitz on January 5, 2013.  Plaintiff argues that the ALJ was under the wrong impression that Plaintiff's May 2012 spinal surgery somehow improved not only her neck condition, but also her shoulder and back injuries as well.  The Commissioner responds that Plaintiff failed to request that the ALJ consider two distinct periods.  Further, the Commission argues that Plaintiff failed to cite to any case law that supports the contention and an ALJ must consider whether a claimant is disabled during some undefined closed period within the entire period, especially when not raised by the claimant.

Plaintiff does not provide the specific 12-month closed time period that she believes she was disabled.  She merely argues that her disability lasted longer than 12 months at some point from her onset date to the date of Dr. Rabinowitz's examination.  The closed time period that Plaintiff alleges was from the onset date to some later date.  The ALJ determined that Plaintiff was not disabled during this time period, and the Court finds that the ALJ's decision is supported

by substantial evidence.  Accordingly, the ALJ did not err in failing to consider Plaintiff's eligibility for some unspecified closed period of disability.  *See Jones v. Comm'r of Soc. Sec.*, 181 F. App'x 767, 773 (11th Cir. 2006).

### III.    Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds that the decision of the ALJ is supported by substantial evidence and decided upon proper legal standards.

**IT IS HEREBY ORDERED:**

The decision of the Commissioner is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. §405(g).  The Clerk is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on March 8, 2016.

MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties